UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

UNITED STATES OF AMERICA                                   :

                                                           :

                              -v.-
                                                           :        17 Cr. 505 (VLB)
GORDON RIDDICK,
                                                           :

              Defendant.
                                                           :
-------------------------------------------------------------- X

## SENTENCING MEMORANDUM FOR THE DEFENDANT GORDON RIDDICK

Carlos M. Santiago
Under the Supervision of Margaret M. Shalley
Margaret M. Shalley & Associates, LLC
225 Broadway, Suite 715
New York, NY 10007
(212) 571-2670



# MARGARET M. SHALLEY
## & ASSOCIATES, LLC

OF COUNSEL:
JAMES M. BRANDEN
JAMES SHALLEY

May 13, 2019

**VIA ECF & US MAIL**
The Honorable Vincent L. Briccetti
United States District Court Judge
The Hon. Charles L. Brieant Jr.
United States Courthouse
South District of New York
300 Quarropas St.
White Plains, NY 10601

> **Re:** *United States v. Gordon Riddick*
> **17 CR 00505 (VLB)**

Dear Judge Briccetti:

This letter is respectfully submitted on behalf of Gordon Riddick pursuant to Rule 32 of the Federal Rules of Criminal Procedure to aid in the determination of an appropriate sentence, serving the interests of justice and sentencing goals of 18 U.S.C. § 3553(a). On January 14, 2019, Mr. Riddick pled guilty to Count Ten of the Superseding Indictment (18 U.S.C. § 924 [c][1][A][i]). Mr. Riddick has been incarcerated since August 17, 2017, and his sentencing is scheduled for May 28, 2019.

Mr. Riddick has expressed deep remorse for his actions and acknowledges the seriousness of the offense he has committed. He understands how his conduct has contributed to the violence and drug addiction that plague his neighborhood. In determining Mr. Riddick's sentence, it is important for the Court to understand that Mr. Riddick is a man who lacked emotional support and guidance from his parents. Mr. Riddick's psychological, emotional, and behavioral development are discussed in the Presentence Report (hereinafter "PSR"). For the reasons stated herein, after consideration of Mr. Riddick's individual history, it is clear that a sentence of 60 months is sufficient, but not greater than necessary.

## BACKGROUND

Gordon Riddick was born February 2, 1994 in Poughkeepsie New York and will appear for sentencing shortly after his 25th birthday. Mr. Riddick was born to the consensual

relationship of Kevin and Lisa Riddick.[1]  Mr. Riddick recalls that he met his father only once; conversing with the man for ten minutes when he was a child.[2]  Mr. Riddick resided with his heroin-addicted mother, older brother, and maternal aunt, who he affectionately refers to as "Rosie."  Mr. Riddick was only six years old when he first watched his mother inject heroin.[3]  Mr. Riddick's brother, Taquan Mizell, recalls their childhood together as full of despair.[4]  Mr. Mizell recalls their mother physically beating them and performing prostitution acts in their presence for money to fund her addiction.[5]  Perhaps most compelling, Mr. Mizell vividly recalls their mother smoking crack cocaine in a car with Mr. Riddick in the backseat while the young boys kept watch for the police.[6]  The boys were frequently hungry and would steal food from local stores to survive, while their mother would disappear for weeks at a time.[7]  They would have to hide their toys because their mother would sell anything of value including "the clothes off their backs" just to fuel her drug habit.[8]  Mr. Mizell ran away from home, leaving Mr. Riddick to fend for himself with his mother and aunt, and now expresses remorse for not being present to counsel his younger brother.[9]  After losing his older brother, it was only shortly after Mr. Riddick's seventh birthday that Aunt Rosie would succumb to illness and die.[10]

Suffering alone in the care of his mother who would ultimately be incarcerated, Mr. Riddick was sent to North Carolina to live with another Aunt, Gayle Thompson, when he was ten years old.[11]  Ms. Thompson recalls that the child arrived in dingy clothes with holes in them.[12]  Mr. Riddick tried desperately to stay in contact with his mother, but Ms. Thompson recalled that the phone calls from Ms. Riddick were "very far and few between" due to her incarceration.[13]  Although Ms. Thompson tried to be the mother figure that Mr. Riddick needed, she recalled he was sad and disheartened by the lack of communication with his mother.

Mr. Riddick returned home to New York in 2012 and took up residence with his addict mother and his mother's husband.[14]  After two years with his mother, Mr. Riddick moved in with his then-girlfriend, Natasha Johnson.[15]  The two enjoyed the birth of their daughter, ████████, who is now 6 years old and suffers from Sickle Cell Anemia.[16]  After his relationship with Ms. Johnson ended, Mr. Riddick became romantically involved with his current girlfriend, Carla Edwards.[17]  The couple has two children, 8 year-old ████████████ and two year-old

---

[1] PSR ¶ 51.
[2] Id.
[3] PSR ¶ 52.
[4] Exhibit A - Letter of Support from Taquan Mizell dated April 10, 2019.
[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] Id.
[10] PSR ¶ 52.
[11] PSR ¶ 53.
[12] Exhibit B - Letter of Support from Gayle Thompson dated March 22, 2019.
[13] Id.
[14] PSR ¶ 53.
[15] Id.
[16] PSR ¶ 54.
[17] PSR ¶ 55.

■■■■■■■[18]   Mr. Riddick is ashamed that he was incarcerated on this matter during the birth of his youngest child.  Notwithstanding, Mr. Riddick is described as a caring and loving father.  Ms. Edwards' mother, Carla Bryant, jokes that Mr. Riddick is "Mr. Mom."[19]

## THE APPROPRIATE SENTENCE

The Court is required to consider the factors set forth in Title 18 U.S.C. § 3553(a) and to impose a sentence that is both reasonable and "sufficient, but not greater than necessary, to comply with the purposes" reflected by the subsections of § 3553(a).  Mr. Riddick is remorseful for his conduct and fully acknowledges his wrongdoing.  After a review of Mr. Riddick's life and circumstances, a sentence of 60 months imprisonment is appropriate, reasonable, and thus warranted in this case.  Pursuant to his plea agreement, the guideline for this 924 offense is 2K2.4(b), which provides that the guideline sentence is the minimum term of imprisonment required by statute, or 5 years.[20]

**1) The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553 (a)(1));**

**a. Nature and circumstances of the offense:**

Mr. Riddick has suffered traumatic experiences including abandonment by his drug-addicted mother and his wholly absent father.  Mr. Riddick's troubled childhood led him down a path of poor decision-making.  Mr. Riddick acknowledges the crime he committed and the harm he caused to his children.

**b. History and characteristics of the defendant:**

Gordon Riddick was born the product of a heroin-addicted mother and an absent father.  On the eve of his mother preparing to be incarcerated, ten-year old Gordon was afraid he would be sent to foster care before his aunt accepted him into her home in North Carolina.

Much of Mr. Riddick's inability to conform to the demands of society is attributable to the lack of a positive male influence.  "Young men who lack ... [an] effective father figure, both as a role model and as a viable presence in their lives, are often hard-pressed to organize their lives in accordance with [societal] standards, standards handed down from generation to generation[.]"[21]   Research has shown that youth from single-parent families often have higher rates of problematic behavior including substance abuse, aggression, dropping out of school, and teenage pregnancy.[22]   Unfortunately, Mr. Riddick's lack of a father and mother figure contributed significantly to the poor choices that he made.

---

[18] Id.; *see also* Exhibit C – Letter of Support from Carla Edwards dated March 27, 2019.
[19] Exhibit D - Letter of Support from Carla Bryant dated March 23, 2019; Exhibit E – Additional Letter of Support from Lisa Riddick dated March 28, 2019.
[20] PSR ¶ 33.
[21] Elijah Anderson, *Code of the Street: Decency, Violence, and the Moral Life of the Inner City*, 237 (2000)
[22] Kenneth W. Griffin, et al., *Parenting Practices as Predictors of Substance Use, Delinquency, and Aggression Among Urban Minority Youth: Moderating Effects of Family Structure and Gender*, 14 Psych. of Addictive Beh. 174, 174 (2000).

For many young African American boys, the cumulative result of poverty, racial segregation, antisocial ethics, and fatherlessness is often crime. "Their career 'choices' and their major life changes largely result from, and are coextensive with, their background and the disturbed family systems in which they were raised and/or currently reside. Persons who grew up in severely distressed households learned strategies that leave them ill-equipped for conventional society."[23]

While mindful that Mr. Riddick pled guilty to a serious crime, we ask the Court for leniency. We ask the Court to take into account, with the appropriate measure and weight, the significance of Mr. Riddick's childhood troubles and the circumstances of being exposed to the debilitating drug addiction of his mother, abandonment by his older brother, fatherlessness, and other childhood traumas that occurred. These unfortunate circumstances weighed heavily on his development and contributed significantly to where he is today. Thus, we ask that the Court take the foregoing into consideration in deciding Mr. Riddick's final sentence.

**2) The need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(A)-(C));**

### a. Seriousness of the Offense

A sentence of sixty months is appropriate and sufficient to reflect the seriousness of the offense for which Mr. Riddick pled guilty and to promote respect for the law and provide just punishment.

### b. Adequate Deterrence to Future Conduct

Imposing a sentence of more than sixty months in this case would have little, if any, bearing on deterrence. Empirical research shows no relationship between sentence length and deterrence. In a pre-Guideline studies of specific deterrence, no difference in deterrence was found as a result of sentence severity, including probation and imprisonment.[24] In addition to the ineffectiveness of a sentence of imprisonment on deterrence, an over-emphasis on general deterrence poses the ethical problem of punishing one person to promote deterrence amongst others. "Judicial punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime."[25]

---

[23] Bruce D. Johnson, et al., *Crack Distribution and Abuse in New York*, 11 Crime Prevention Stud. 19, 26 (2000)
[24] Andrew von Hirsch, et al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects.")
[25] *Id.*

### c.  Public Safety and Potential Recidivism

The Sentencing Commission has published studies concluding that the Guidelines overstate the risk of recidivism and that, on the contrary, "there is no correlation between recidivism and [a] guidelines' offense level."[26] "The guidelines' offense level is not intended or designed to predict recidivism."[27] Whether an offender has a low or high guideline offense level, recidivism rates are similar.  While surprising at first glance, this finding should be expected since a Guidelines offense level is not intended or designed to predict recidivism."[28]  We respectfully contend that Mr. Riddick possesses qualities which make him unlikely to recidivate, including the responsibility to care of his three young children, and the support of his family and friends.

**(3) The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care or other corrective treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D)).**

Mr. Riddick is currently housed at Metropolitan Detention Center which in January of this year suffered an electrical malfunction leaving Mr. Riddick and other inmates in frigid conditions for almost a month without heat and power.[29]  No hot meals were served for the duration of the blackout and inmates were not given adequate clothing or blankets to keep warm - conditions that rival the worst refugee camp in the world.[30]  Notably, in a sentencing decision, Judge Furman stated that the environment at the MDC during the blackout gave rise to "conditions that one associates with a third world country and not a country like this, and nobody in detention… should have to endure that as the detainees did at the MDC."[31]  They were not given food for an entire day and when they finally did receive a meal, they were given cold sandwiches.  Commissary was also closed so Mr. Riddick could not even buy himself something to eat.  Additionally, the toilets in the cells are electric so the inmates were unable to even go to the bathroom.

Despite the challenges Mr. Riddick has faced up to date, he remains optimistic and determined to use this incarceration experience to improve himself, improve his family's

---

[26] Measuring Recidivism: *The Criminal History Computation of the Federal Sentencing Guidelines* at 15 (May 2004) available at http://www.ussc.gov/publicat/Recidivism_General.pdf ("Measuring Recidivism"); *Recidivism and the First Offender* (May 2004) available at http://ussc.gov/publicat/Recidivism_General.pdf; A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score (Jan. 4 2005) available at http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf.

[27] Measuring Recidivism, at 15.

[28] *Id.*

[29] John Schuppe, 'Brooklyn jail without heat reflects wider neglect in federal prisons, critics warn' (online, February 5, 2019) https://www.nbcnews.com/news/us-news/brooklyn-jail-without-heat-reflects-wider-neglect-federal-prisons-critics-n966841

[30] Annie Correal, *No Heat for Days at a Jail in Brooklyn Where Hundreds of Inmates are Sick and 'Frantic,'* N.Y. TIMES, Feb. 1, 2019, https://www.nytimes.com/2019/02/01/nyregion/mdc-brooklyn-jail-heat.html; *see also* Annie Correal and Joseph Goldstein, *'It's Cold as Hell': Inside a Brooklyn Jail's Weeklong Collapse*, N.Y. TIMES, Feb. 9, 2019, https://www.nytimes.com/2019/02/09/nyregion/brooklyn-jail-no-heat-inmates.html.

[31] Sentencing decision in *United States v. Ozols*, 16 CR 692 (JMF) (February 12, 2019).

condition, and change the narrative for his life and that of his children.  Accordingly, he intends to avail himself of any programs the Bureau of Prisons has to offer.

## **CONCLUSION**

Mr. Riddick regrets his involvement and remains remorseful towards all who were harmed by his actions.  Accordingly, Mr. Riddick hereby respectfully requests that the Court impose a sentence of 60 months incarceration.  The Court's time and consideration of this submission is greatly appreciated.

Respectfully Submitted,

/s/ Carlos M. Santiago

Under the Supervision of Margaret M. Shalley